UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-24205-Civ-COOKE/TORRES

MARKIVIA BEAUBRUN, individual and
as Personal Representative of the Estate of
GEORGE SPENCE CLAYTON, Jr. deceased
and as Assignee of the Estate of CARLOS
BERNARD BROWN, deceased,

        Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,

        Defendant.
_____/

# ORDER DENYING DEFENDANT'S AMENDED MOTION TO COMPEL

This matter is before the Court on Geico General Insurance Company's ("Defendant") Amended Motion to Compel ("Motion") [D.E. 24] against Markivia Beaubrun ("Plaintiff") ("Defendant") to compel discovery. Plaintiff responded to Defendant's Motion on April 26, 2017 [D.E. 28] to which Defendant replied on May 3, 2017. [D.E. 29]. Therefore, this Motion is now ripe for disposition. After careful consideration of the Motion, response, and relevant authority, and for the reasons discussed below, Defendant's Motion is **DENIED**.

## I.    BACKGROUND

This action arises out of an August 8, 2015 automobile accident involving the Defendant's insured, Carlos Bernard Brown, and his passenger, George Spence Clayton, which resulted in their deaths. [D.E. 1-1]. At the time of the accident,

1

Brown, the driver, was insured under a GEICO policy of insurance. *See id.* ¶ 7. The Policy provided bodily injury limits of $10,000/$20,000 per occurrence. *See id.* The effective dates of coverage under the policy were from February 10, 2015 through August 10, 2015. *See id.* As a result of the accident, the Estate of Clayton filed a wrongful death action against the Estate of Brown in the Eleventh Judicial Circuit Court in and for Miami-Dade County on March 9, 2016. *See id.* ¶ 8. Defendant was timely notified of the pendency of the lawsuit, but did not provide a defense to the Estate of Brown. *See id.* ¶ 9.

On May 10, 2016, the Estate of Clayton and the Estate of Brown (collectively, the "Estates") entered into a "Stipulation and Agreement for Settlement of Claim and Covenant Not to Sue" and an "Agreement for Assignment of Claims" (the "Agreements").[1] *See id.* ¶ 10. Pursuant to the terms of the Agreements, the court entered judgment against the Estate of Brown in the amount of four million dollars. *See id.* ¶ 11.

On August 16, 2016, Plaintiff filed suit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Case No. 2016-021339. In that complaint, Plaintiff requests declaratory relief pursuant to Fla. Stat. § 86.011, set forth allegations of bad faith against Defendant, and seeks recovery of the full loss of the damage to the vehicle, pre-judgment interest, and attorney's fees. Defendant

---

[1] Defendant claims the Estates entered into these agreements without its knowledge or consent. [D.E. 5 ¶ 4].

removed the case to this Court on October 3, 2016 on the basis of diversity jurisdiction.[2]

On November 17, 2016, the Court denied Defendant's Motion to dismiss Count II (the bad faith claim) of Plaintiff's complaint. Rather than dismiss Plaintiff's claim, the Court abated it until the Court could properly determine Plaintiff's rights under the applicable insurance policy.

## *II.    ANALYSIS*

Defendant's Motion seeks to compel discovery based on Plaintiff's responses to Defendant's first and second requests for production. More specifically, Plaintiff's privilege log identified May 6 and May 9, 2016 emails that purportedly relate to the settlement negotiations that took place between the Estates in the underlying action. Irrespective of Plaintiff's contention that the documents are protected under the work product doctrine, Defendant argues that it has a substantial need to obtain the discovery of materials related to any settlement negotiations or discussions that took place between the parties' representatives in the underlying suit. Defendant also allegedly has a substantial need to obtain any documents Plaintiff intends to rely on to support the allegation in the complaint that Defendant was timely notified of the underlying suit.

The U.S. Supreme Court set forth the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947) to protect a lawyer's ability to prepare cases and theories, and to prevent opponents from taking advantage of his work or disrupt

---

[2]    There is complete diversity of citizenship between the parties, as Plaintiff is a citizen of Florida, while Defendant is a citizen of the Maryland.

3

ongoing litigation. Rule 26(b)(3)(A)(ii) protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" unless the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii). Thus, the Rule protects from disclosure materials prepared by an attorney in anticipation of litigation.

"The work product doctrine is distinct from and broader than the attorney-client privilege, and it protects materials prepared by the attorney, whether or not disclosed to the client, as well as materials prepared by agents for the attorney." *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 653 (S.D. Fla. 2009) (citing *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir. 1979)). Moreover, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena,* 220 F.3d 406, 409 (5th Cir. 2000). Yet, this still requires the party asserting protection under the work product doctrine to demonstrate that the drafting entity anticipated litigation at the time the documents were drafted. *See CSX Transp., Inc. v. Admiral Ins. Co.,* 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995). This means that materials drafted in the ordinary course of business are not protected under the work product doctrine.

4

In determining whether materials are protected, a court must determine when and why a contested document was created. *See, e.g. In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998) ("The 'testing question' for the work-product privilege . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"). And similar to the attorney-client privilege, "the burden is on the party withholding discovery to show that the documents should be afforded work-product [protection]." *Fojtasek,* 262 F.R.D. at 654 (citing *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir. 1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company,* 2006 WL 1733857 at *2 (M.D. Fla. June 20, 2006) ("[T]he party asserting work product privilege has the burden of showing the applicability of the doctrine") (citing *Grand Jury Proceedings v. United States,* 156 F.3d 1038, 1042 (10th Cir. 1998))).

The application of Rule 26(b)(3) requires the Court to first determine which documents were produced in anticipation of litigation. "For documents that were produced in anticipation of litigation, the second issue is whether [the moving party] can show 'substantial need' and an inability to obtain the materials by other means." *Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 667 (N.D. Ga. 2008). "Even as to documents for which [the moving party] can show substantial need, documents containing the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative must'" receive

5

additional (if not complete) protection. *Id*. (quoting FED. R. CIV. P. 26(b)(3)). In short, "the moving party must demonstrate that the materials are discoverable under Rule 26(b)(1), there is a substantial need for the materials to prepare its case, and that it cannot, without undue hardship, obtain the substantial equivalent by other means." *Batchelor v. Geico Cas. Co.*, 2014 WL 3697691, at *3 (M.D. Fla. Apr. 22, 2014) (citing FED. R. CIV. P. 26(b)(3)(A)).

Although the bad faith claim is abated in this action, Defendant argues that the same principles for the production of work product documents should continue to control the discovery of relevant materials. Defendant notes that "[u]nder Florida law, an insurer owes its insured a duty of care when it defends a claim against him." *Griffith v. Geico Gen. Ins. Co.*, 2013 WL 12148857, at *2 (M.D. Fla. Dec. 12, 2013) (citing *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)). Whether the insurer breached that duty is analyzed under the totality of the circumstances. And "[g]iven that a bad-faith-insurance case involves an underlying case allegedly handled in bad faith by the insurer, the Florida Supreme Court has held that work-product protection that would otherwise be given to documents prepared in anticipation of litigation of the underlying case does not automatically operate to protect those documents from discovery in a bad-faith-insurance case." *Griffith*, 2013 WL 12148857, at *2 (citing *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1130–31 (Fla. 2005)). Therefore, Defendant suggests that the work product protection has been automatically eviscerated and that Plaintiff must provide the requested materials. *See Kemm v. Allstate Prop. & Cas. Ins. Co.*, 2009

6

WL 1954146, at *3 (M.D. Fla. 2009) (observing that "motives and conduct of an insured and his attorney may be relevant to the issues of whether the insured precluded the insurer from fully investigating the claim and whether the insured precluded the insurer from ever having a reasonable opportunity to settle a claim").

Specifically, Defendant contends that Plaintiff produced a privilege log and asserted work product privileges in response to Defendant's discovery requests. Defendant argues that Plaintiff should be compelled to produce the documents from Plaintiff's privilege log that are responsive because it would allegedly be improper to allow Plaintiff to assert a bad faith claim and withhold relevant materials. With respect to Defendant's first request for production, Defendant sought documents relating to Plaintiff's allegation that Defendant was timely notified of the underlying lawsuit:

> 3. All documents Plaintiff intends to rely on to support Plaintiff's allegation in Paragraph 9 of the Complaint that GEICO was timely notified of the pendency of the underlying suit filed by Markivia Beaubrun, Personal Representative of the Estate of George Spence Clayton, Jr. against the Estate of Carlos Bernard Brown, Case. No. 2016-005990-CA-01.

[D.E. 18-1]. Defendant also sought documents pertaining to the settlement agreement entered into between the Estates in the underlying action:

> 2. Any and all documents pertaining to the Stipulation, Settlement Agreement, and Covenant Not to Sue (the "Agreement"), entered into between the Estate of Carlos Bernard Brown and the Estate of George Spence Clayton, Jr., on or about May 10, 2016. This request specifically includes, but is not limited to, any and all documents, memoranda, and correspondence, including electronically stored information, exchanged between the respective legal representatives of the Estate of Carlos Bernard Brown and the Estate of George Spence Clayton, Jr. related to the Agreement or any settlement negotiations,

7

and any discussions that took place prior to entering into the Agreement.

*Id.*[3] Defendant argues that, despite the abatement of the bad faith claim, Defendant's affirmative defenses in this case concerning lack of notice regarding the underlying suit and the unreasonableness of the settlement agreement are critical to a proper defense of this action.

The entirety of Defendant's argument relies on the Florida Supreme Court's decision in *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121 (Fla. 2005) and its progeny. In *Ruiz*, the Florida Supreme Court stated that in bad faith litigation, the work product doctrine does not apply automatically to an *insurer's* "materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages." *Id.* at 1129–30. The reasoning in *Ruiz* emphasized that the discovery of the claim filed was critical because it "present[ed] virtually the only source of direct evidence with regard to the essential issue of the insurance company's handling of the insured's claim." *Id.* at 1128. Importantly, the Court did not address whether the work product protection applied in the same way to an insured's underlying materials.

---

[3] Plaintiff notes that it recently filed an amended response to Defendant's request for production no. 3 in order to clarify that there were no privileged documents withheld in response to this discovery request. As such, Defendant's Motion, as it relates to this request, is moot.

8

The Middle District confronted the same question (and many of the same arguments) as presented here, in *Walker v. GEICO Indem. Co.*, 2017 WL 1174234, at *9 (M.D. Fla. Mar. 30, 2017). In *Walker*, the court found that it was "not clear . . . that the concerns expressed by the *Ruiz* court with regard to the availability of evidence apply equally to an insurer's affirmative defense." *Id*. And similar to that case, the Defendant here has not addressed the rationale behind the *Ruiz* decision or "whether Plaintiff's otherwise work product protected information is the only, or at least virtually the only, source of evidence to support its affirmative defense." *Id*. Devoid of any reasoning, Defendant merely suggests that because the insured is allowed to overcome the work product protections of the insurer then the same principle should apply vice-versa.

District courts in Florida disagree as to whether state or federal law applies to the work product doctrine in the context of a court exercising diversity jurisdiction over a bad faith claim where the underlying action took place entirely in state court. *See e.g., Cozort v. State Farm Mut. Auto. Ins. Co.*, 233 F.R.D. 674, 676 (M.D. Fla. 2005) (determining that state law applies to the work product analysis where the underlying bad faith case was brought, litigated, and resolved in state court); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 699–700 (S.D. Fla. 2007) (determining that federal law applies to work product protection and distinguishing *Cozort* because, *inter alia*, *Milinazzo* did not involve a bad faith claim); *see also Batchelor v. Geico Cas. Co.*, 2014 WL 3697682, at *5 (M.D. Fla. June 4, 2014) ("While federal law provides the framework for assessing the applicability of the

9

work-product privilege and whether it has been overcome in a diversity case, state law nevertheless remains instructive in determining whether there is a substantial need for materials otherwise protected by the privilege."), *aff'd*, 2014 WL 3687492 (M.D. Fla. July 17, 2014); *Woolbright v. GEICO Gen. Ins., Co.*, 2012 WL 12864931, at *3 (S.D. Fla. Nov. 16, 2012) (stating that "[u]nlike the attorney-client privilege, work product protection is governed by federal law even in diversity cases. But in bad faith cases where Florida work product protection governed the underlying case, Florida law is relevant" and citing, among other cases, *Cozort* and *Milinazzo* (internal citations omitted)).

Like *Walker*, we need not resolve this issue because *Ruiz* does not stand for the proposition that there is a blanket exception to the work production doctrine for an insured's protected information. *See Walker*, 2017 WL 1174234, at *9 ("*Ruiz* does not create a blanket exception to the work product doctrine for the insureds' work product protected information"). As a result, the Court will proceed with a typical work product analysis in light of the fact that federal and state law on this matter is "for all relevant purposes, the same." *Id*. at *9. "To compel the disclosure of work product protected information, Rule 26(B)(3)(A)(ii) requires Defendant to establish 'that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Id*. at 10 (citing Fla. R. Civ. P. 1.280(b)(4) (requiring a showing "that the party seeking discovery has need of the materials in the preparation of the case and

is unable without undue hardship to obtain the substantial equivalent of the materials by other means" to obtain discovery of work product)).

After a thorough review of Defendant's Motion, Defendant has plainly failed to satisfy the basic requirements of Rule 26(b)(3). Defendant merely tethers its substantial need to its affirmative defenses:

> [E]ven if these documents are work product, GEICO has a substantial need for these documents to prepare its defense. This is particularly so because of the close proximity in time between the dates of these documents and the entry of the actual agreement, which makes it more likely than not that these documents bear on at least one of GEICO's affirmative defenses against the enforceability of the [settlement agreement].

[D.E. 24 at 9]. This argument is insufficient for the same reasons as found in *Walker* because it fails to explain why the "information requested cannot be obtained from another source, for example deposing Plaintiff."[4] *Walker*, 2017 WL 1174234, at *10 ("Defendant states that whether or not Plaintiff would have settled the underlying case within the policy limits is directly at issue in Defendant's affirmative defense and the work product materials contain information that address this matter. Again, Defendant has failed to explain why this same information cannot be obtained from another source, for example deposing Plaintiff.").

---

[4] It appears that Defendant has deposed the attorneys for the opposing parties who negotiated the underlying settlement agreement, Stuart Share (Counsel for the Estate of Clayton) and David Crane (Counsel for the Estate of Brown). Yet, Defendant makes no argument as to why that deposition was not fruitful with respect to (1) the discussions between the attorneys leading up to and culminating in the settlement agreement, (2) the factors considered in reaching the settlement sum, (3) the interactions between the parties, and (4) the motivations behind the agreement.

Substantial need cannot be overcome simply with an argument that documents are relevant and will assist in bolstering a party's affirmative defenses. Defendant appears to have glossed over the part of Rule 26(b)(3) that requires a party to show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their *substantial equivalent by other means*." FED. R. CIV. P. 26(b)(3). There is nothing in Defendant's Motion that satisfies the latter part of Rule 26(b)(3). Accordingly, Defendant has failed to establish that there is a substantial need for the discovery of Plaintiff's documents and Defendant's Motion on this basis is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Amended Motion to Compel [D.E. 24] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th day of May, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge