UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-24205-Civ-COOKE/TORRES

MARKIVA BEAUBRUN, individually
and as Personal Representative of the
Estate of George Spence Clayton, Jr.
deceased and as Assignee of the Estate of
Carlos Bernard Brown, deceased,

    Plaintiff,

vs.

GEICO GENERAL INSURANCE COMPANY,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This action arose from a fatal car accident. Plaintiff Markiva Beaubrun, personal representative of decedent George Spence Clayton, Jr.'s estate, brings suit against Defendant GEICO General Insurance Company ("GEICO"), insurer of the third party driving the vehicle Clayton was a passenger in at the time of the accident (the "Driver"). Beaubrun seeks declaratory relief enforcing her purported rights under an insurance contract between the Driver and GEICO, and compensatory damages for GEICO's alleged bad faith. (ECF No. 1-1). I have jurisdiction under 28 U.S.C. §§ 1332 and 1441.

Pending is GEICO's Motion for Summary Judgment. (ECF No. 60). For the reasons that follow, I deny the Motion.

## BACKGROUND

The accident happened in Miami-Dade County on August 8, 2015. (ECF No. 1). At that time, the Driver was insured with GEICO under a general automobile liability policy providing bodily injury liability coverage in the amount of $10,000 per person and $20,000 per accident. (ECF No. 59-2). The policy provided, *inter alia*, that GEICO "will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit. We have no duty to investigate or defend any claims which are not covered under the terms of this policy. Our duty to defend ends when the limits of liability for bodily injury liability have been exhausted by payments of judgments or settlements." (*Id.* at 10).

Probate of Clayton's estate began in late November 2015.[1] (ECF No. 59-3). The court appointed Beaubrun as the estate's personal representative on November 17, 2015 (ECF No. 59-4). Probate of the Driver's estate also began around that time.[2] Beaubrun petitioned to be the estate's personal representative in that action as well (ECF No. 59-5), but the court instead appointed attorney David Crane as Administrator Ad Litem. (ECF No. 59-6).

On February 19, 2016, Beaubrun filed a Statement of Claim ("SOC") in the Driver's estate's probate action, asserting that Clayton's estate had, as of February 17, 2016, a secured, non-contingent claim for $1 million in a possible wrongful death action against the Driver's estate. (ECF No. 59-12). A few days later, Beaubrun filed a wrongful death action against the Driver's estate in Broward County, Florida seeking unspecified damages. (ECF No. 59-13). After learning that she had inadvertently filed that action in the wrong county (ECF No. 59-16), Beaubrun filed a second wrongful death action in Miami-Dade County, Florida (the "Wrongful Death Action").[3] GEICO was aware of the Wrongful Death Action but did not provide the Driver's estate with a defense. (ECF Nos. 1-1 ¶ 9, 48-1 ¶ 9, 81 at 3).

Beaubrun and the Driver's estate eventually entered into a "Stipulation and Agreement for Settlement of Claim and Covenant Not to Sue" (the "Agreement"). (ECF No. 59-28 at 2-4). In it, the Driver's estate agreed to entry of a $4 million judgment against it, and Beaubrun agreed not to execute the judgment against the Driver's estate. (*Id.*). The Agreement further assigned Beaubrun any and all causes of actions or rights of the Driver's estate against GEICO. (*Id.*).[4]

With the Agreement in place, Beaubrun filed an Amended Statement of Claim ("ASOC") in the Driver's estate's probate action, asserting that Clayton's estate had, as of February 17, 2016, a secured, non-contingent wrongful death claim against the Driver's estate

---

[1] According to the filings in that matter, the only asset of Clayton's estate was an unidentified wrongful death action with an approximate value of zero dollars. (ECF No. 59-3).

[2] *In re: Estate of Carlos Bernard Brown*, No. PRC-15-5468 (Fla. Broward County Ct.)

[3] *Beaubrun v. Brown*, No. 2016-005990-CA-01 (Fla. Miami-Dade County Ct.).

[4] This type of agreement, first recognized in *Coblentz v. American Sur. Co. of New York*, 416 F.2d 1059 (5th Cir. 1969), is often referred to as a "*Coblentz* agreement." A *Coblentz* agreement, generally speaking, is a settlement agreement where "an insurer who ha[s] refused to handle its insured's defense, thus leaving its insured to his own resources, was bound by the terms of a negotiated final consent judgment entered against the insured." *In re Superior Homes & Investments, LLC*, 521 F. App'x 895, 897 (11th Cir. 2013) (internal quotation marks omitted).

for $4 million. (ECF No. 59-31). Beaubrun also filed a Motion for Entry of Final Consent Judgment in the Wrongful Death Action. (ECF No. 59-32). The court held a hearing on the Motion on June 8, 2016 (ECF No. 59 ¶ 30), and entered judgment against the Driver's estate for $4 million that same day. (ECF No. 59-26).

On August 16, 2016, Beaubrun filed a two-count Complaint against GEICO in state court (ECF No. 1-1)[5] which GEICO removed (ECF No. 1). Count I seeks a declaration under Fla. Stat. § 86.011 that the Agreement was reasonable, executed in good faith, and imposed on GEICO a duty to defend and indemnify the Driver's estate in the Wrongful Death Action. Count II seeks damages for GEICO's alleged bad faith in refusing to defend the Driver's estate in that action. Count II is abated pending adjudication of Count I. (ECF No. 12).

## STANDARD OF REVIEW

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*.

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,*

---

[5] *Beaubrun v. GEICO*, No. 2016-021339-CA-01 (Fla. Miami-Dade County Ct.).

*Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

## DISCUSSION

A party seeking recovery under a *Coblentz* agreement "must bring an action against the insurer and prove coverage, wrongful refusal to defend, and that the settlement was reasonable and made in good faith." *Quintana v. Barad*, 528 So.2d 1300, 1301 n.1. (Fla. Ct. App. 1988). GEICO argues Beaubrun fails to meet her burden because: (1) the ASOC underlying the Final Consent Judgment was invalid; (2) the settlement is "patently" unreasonable; and (3) the settlement "is tainted with bad faith, fraud, collusion, and lack of any effort to minimize liability" (ECF No. 60 at 11, 16). I address each argument in turn.

### A. Validity of the ASOC

GEICO argues that "a time-barred probate claim that exceeds a decedent's insurance policy limits cannot be recovered in a subsequent action against an insurer." (ECF No. 60 at 8). Such a claim, GEICO asserts, is invalid, and "[b]ecause there can be no exposure to an estate for the amount of an invalid claim, any agreement reached on such alleged exposure, like the *Coblentz* agreement in this case, must also fail." (*Id.* at 19).

The Driver's estate first published its Notice to Creditors on February 2, 2016. (ECF No. 59-10). Under Fla. Stat. § 733.702(1), creditors had three months from that date to file claims against the estate, or until May 2, 2016. The original SOC, filed during the claims period, valued the Driver's estate's potential liability at $1 million. (ECF No. 59-12). That figure increased to $4 million when Beaubrun filed the ASOC on May 19, 2016, more than two weeks after the claims period ended. (ECF No. 59-31). GEICO asserts the ASOC was invalid because it was untimely and excessive. The question is whether GEICO can raise that defense in this action after not raising it in the Wrongful Death Action.

It is well settled that a *Coblentz* agreement establishes the insured's liability. *Mid-*

4

*Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 181-82 (Fla. Ct. App. 2015) ("The notion is that the settlement establishes the insured's liability, but not the insurer's obligation of coverage."). Likewise, the subsequent entry of a consent judgment is conclusive against the insurer as to all matters determined in the judgment. *Gallagher v. Dupont*, 918 So.2d 342, 348 (Fla. Ct. App. 2006). Thus, in proceedings to enforce a consent judgment, the insurer is not permitted to assert any defense that it could have raised in the underlying lawsuit between the assignee and the insured. *Indep. Fire Ins. Co. v. Paulekas*, 633 So.2d 1111, 1114 (Fla. Ct. App. 1994) ("[The insurer] was not permitted to assert all of the defenses which could have been asserted in the underlying cause of action . . . ."); *Gallagher*, 918 So.2d at 348 ("[T]he insured's liability has been established by the settlement, and the insurer may not later relitigate the issue.").

GEICO cites *May v. Illinois National Insurance Co.*, 771 So.2d 1143, 1153-54 (Fla. 2000), to argue that "[a]lthough the time periods in Fla. Stat. § 733.702(1) are waived in a separate action if not raised as an affirmative defense, such waiver does not render a judgment obtained in that separate action recoverable from an estate." (ECF No. 60 at 8). In *May*, the Florida Supreme Court held that section 733.702 "is a statute of limitations that cannot be waived in a probate proceeding by failure to object to a claim on timeliness grounds." *May*, 771 So.2d at 1145. The court specified, however, that its holding was limited to actions brought *in probate court*. *See id.* at 1157 n.12. Beaubrun does not seek redress in probate court; she seeks redress in federal district court. *May* therefore does not apply. Accordingly, GEICO's failure to challenge the ASOC's validity in the Wrongful Death Action constituted a waiver of that defense in this action.[6]

### B. Reasonableness

Generally, whether a *Coblentz* agreement is reasonable is a question of fact inappropriate for resolution on summary judgment. *See Garcia v. Geico Gen. Ins. Co.*, 2012 WL 12859819, at *6 (S.D. Fla. 2012) (reasonableness of settlement is jury question); *see also Citrus County v. McQuillin*, 840 So. 2d 343, 348 (Fla. Ct. App. 2003) ("Who can place a dollar value on a

---

[6] GEICO also argues that the ASOC violated Florida probation law because it changed the substance (i.e., the amount) of the claim rather than its form. *See* Fla. Prob. R. 5.490(e) ("If a claim as filed is sufficient to notify interested persons of its substance but is otherwise defective as to form, the court may permit the claim to be amended at any time."). Again, GEICO could have raised that argument as a defense in the Wrongful Death Action. Because it did not, the defense is waived in this action.

human life measured by the loss and grief of a loved one? That difficult decision is generally one for the jury or fact-finder not the appellate court."). GEICO nonetheless asks that I find the Agreement unreasonable as a matter of law. The Eleventh Circuit stated the test for making such a determination in *Jiminez v. Gov't Employees Ins. Co.*, 651 F. App'x 850, 853-54 (11th Cir. 2016):

> In determining whether a settlement is reasonable, a Florida court considers not only such objective factors as the extent of plaintiff's injuries, but also certain "subjective factors . . . including the degree of certainty of the tortfeasor's subjection to liability, the risks of going to trial and the chances that the jury verdict might exceed the settlement offer.'" A determination of reasonableness of the settlement agreement is made in view of the degree of probability of the insured's success and the size of the possible recovery."

(Citations omitted).

Applying the *Jiminez* court's analysis to this case, there is no question that issues of fact remain for the jury. The Driver's estate faced enormous exposure because, *inter alia*, the accident was the Driver's fault,[7] the accident was fatal, the decedent left four children, and GEICO was not defending him. (ECF No. 1-1). Given those facts, a jury in this case could conclude that the $4 million settlement amount was reasonable because it eliminated the risk of an even larger jury verdict. *See St. Paul Fire and Marine Ins. Co. v. Shure*, 647 So. 2d 877, 881 (Fla. Ct. App. 1994) ("Normally tortfeasors settle to limit their exposure for plaintiff's damages and to save the expense of litigation."); *see also, e.g.*, *Wisekal v. Lab. Corp. or Am. Holdings*, 2014 WL 3734581, at *5 (S.D. Fla. 2014) (jury verdict in wrongful death case arising from car accident *reduced* to award surviving spouse $1 million and surviving children $2 million each); *Citrus County v. McQuillin*, 840 So. 2d 343, 347 (Fla. Ct. App. 2003) ($4.4 million jury verdict for son of woman killed in car accident, while "on the outer limit in size," not excessive); *Hyundai Motor Co. v. Ferayorni*, 842 So. 2d 905, 909 (Fla. Ct. App. 2003) ($6.5 million jury verdict for parents of child killed in car accident not excessive).

### C. Good Faith

Finally, GEICO argues that Beaubrun cannot prove that the settlement was made in good faith. *See Quintana*, 528 So.2d at 1301 n.1. Whether a *Coblentz* agreement was entered into in good faith is ordinarily a question of fact for the jury. *Campbell v. C.I.R.*, 658 F.3d 1255, 1258

---

[7] The police report indicates that the Driver ran a red light and turned left into the path of an oncoming vehicle. (ECF No. 59-1).

6

(11th Cir. 2011). GEICO nonetheless complains that David Crane, Administrator Ad Litem for the Driver's estate, "did not negotiate [Beaubrun's] $4,000,000 settlement proposal," but instead just accepted the first offer without even attempting to "verify the [proposal's] legitimacy" or to "determine the extent of Plaintiff's damages by making at least some rudimentary inquiry into [the decedent's] financial situation and his relationship with his children." (ECF No. 60 at 12-13). GEICO asserts that Crane did so in bad faith to "maximize" Beaubrun's recovery, and to "rid himself of one of several creditors to [the Driver's] estate that he did not want to bother dealing with." (*Id.* at 16, 19).

In response, Beaubrun offers Crane's deposition testimony, in which he explains his reasoning for entering into the Agreement:

> **Q.** So going back to the four million dollar amount, was it your idea or [Beaubrun's attorney's] idea?
>
> **A.** I think he floated it by me. Initially my recollection was that the initial complaint was in the amount of in excess of $15,000. Then it was an amount of one million dollars, and then for the terms of settlement it would be four million dollars.
>
> And I consented to that, because *I was trying to limit the exposure of the Estate to a very lofty amount. . . .* And again *I felt that the four million dollar settlement amount representing one million for each of the four heirs would be reasonable and would not shock the conscience of the Court.*

(ECF No. 60-4 at 89 (emphasis added)).

> **Q.** What evidence if any did you have that the four million dollar figure would limit the exposure to the Estate?
>
> **A.** Because I felt by putting a limit on it I would have a known value that it could not exceed. *It's possible if this went to trial that the jury come back with a very large figure and I figured that a consent settlement was a known factor whereas it would be unknown what would happen if this case did go to trial.*
>
> **Q.** Do you also believe it's possible the jury could have returned back a verdict for less than this amount?
>
> **A.** Its possible. But based upon what I read in the accident report *I believe that liability was – was on [the Driver] and his Estate.*
>
> **Q**. So is this the basis for the amount the accident report?
>
> **A.** No. No. But I – *I felt that [the Driver] was negligent and that that was a proximate cause of this automobile accident*. And, knowing what I subsequently learned about [the Driver], and I did not know anything about his passenger Mr. Clayton I was trying to reduce the exposure to the [Driver's estate].

>    **Q.** Prior to entering into this agreement did you do any discovery?
>
>    **A.** With respect to what sir?
>
>    **Q.** The underlying action or the amount in question?
>
>    **A.** No because I had not received any communication from [GEICO's attorney] nor GEICO, and I did not know because I wasn't – they did not serve me with any responses and that's why I would ask [Beaubrun's attorney] in my emails has he heard any word, what was – in a sense what was going on. Was the position of GEICO that they are denying liability? Were they accepting liability I just didn't hear.
>
>    **Q.** When you determined that [the Driver] was liable for the accident would that be taking a position on the case?
>
>    **A.** *I wasn't taking a position on the case, I was trying to limit the liability, the potential liability on the Estate's exposure.*

(*Id.* at 91-93 (emphasis added)).

When asked what would have happened if he had not agreed to the settlement, Crane testified:

>    **Q.** And the alternative to that would be for the case to proceed without a lawyer? You could not defend that case?
>
>    **A.** That's correct.
>
>    **Q.** And if a default was subsequently entered you would have an undefended defendant at trial with four children of a deceased individual?
>
>    **A.** That's correct.
>
>    **Q.** Do you feel that you had any viable alternative [to the settlement] with GEICO not having coming in and defended the case?
>
>    **A.** I received no word from GEICO. Total absence. And *I felt this was in the best interests of the Estate* to protect the Estate into a reasonable settlement amount.

(*Id.* at 104-05 (emphasis added)).

>    **Q.** Do you believe the one million dollars per child was just an arbitrary number?
>
>    **A.** *It appeared to be reasonable because sometimes these cases are in excess of one million dollars per child* and again I was trying to limit the exposure, the Estate's exposure.

(*Id.* at 107).

Thus, Crane testified he agreed to the settlement amount because it "limited the exposure to the extent that the four million dollars represented a cap in a settlement matter, because the Plaintiffs could pursue the wrongful-death matter and have a larger award." (ECF

8

No. 60-4 at 96, 106). He claims he also considered the Driver's role in the accident, whether the amount would be fair to Clayton's heirs, whether the amount would shock the conscience of the Court, and what the estate's prospects would be if he allowed the litigation to proceed without legal representation. *See supra*. At the very least, Crane's testimony creates a question of fact as to whether the Agreement was a product of good faith.

## CONCLUSION

In sum, questions of fact preclude summary judgment on Beaubrun's claim. It is therefore **ORDERED and ADJUDGED** that GEICO's Motion for Summary Judgment (ECF No. 60) is **DENIED**.

**DONE** and **ORDERED** in chambers at Miami, Florida, this 28TH day of February 2018.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*